IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTICT OF MISSOURI

SAMUEL TRAPP,
    Plaintiff;

v.

THE STATE OF MISSOURI, JOHN GUNN,
JOHN GRIMM, LAUREN MCCUBBIN,
THOMAS BENDER, MISCHA EPPS, JULIA
LASATER, CHRISTA MOSS, JASON
PAULSMEYER, SAM PHILLIPS, GEORGE
W. DRAPER III, PAUL C. WILSON, MARY
R. RUSSELL, W. BRENT POWELL,
PATRICIA BRECKENRIDGE, LAURA
DENVIR STITH, ZEL M. FISCHER, JOHN
DOE MEMBERS OF THE MISSOURI BAR
CLIENT SECURITY FUND COMMITTEE,
    Defendants.

Case #   21-cv-4006-NKL

*JURY DEMANDED*

## COMPLAINT

COMES NOW PLAINTIFF SAMUEL TRAPP and for his COMPLAINT against

defendants alleges and states as follows:

## PARTIES

1.    Plaintiff is an individual adult resident of the State of Missouri, with the capacity to

      bring action against defendants.

2.    Defendant State of Missouri is a governmental body that acts as the ultimate

      professional licensing authority for all professions authorized to conduct business in

      the State of Missouri, with the responsibility to issue or deny licensure to all

      applying to practice as licensed professionals in the state of Missouri; maintain the

      official roll of professionals authorized to engage in the various professions in the

      state of Missouri; create rules relative to the operation and conduct of a profession

in the State of Missouri; and oversee the discipline of any person engaged in the practice of a licensed profession for the violation of professional and/or ethical rules of conduct.

3. Defendants John Gunn, John Grimm, Lauren McCubbin, Thomas Bender, Mischa Epps, Julia Lasater, Christa Moss and Jason Paulsmeyer are the current Executive Committee of the Board of Governors of the Missouri Bar, which appoints the members of the Missouri Bar Client Security Fund Committee and establishes the rules of its operation.

4. Defendants George W. Draper III, Paul C. Wilson, Mary R. Russell, W. Brent Powell, Patricia Breckenridge, Laura Denvir Stith and Zel M. Fischer are members of the Supreme Court of Missouri and are ultimately responsible to ensure that all applicants for professional licensure are provided the protections guaranteed under the Constitution of the State of Missouri and under the Constitution of the United States.

5. Defendant Sam Phillips is an attorney for the Missouri Office of Chief Disciplinary Counsel.

6. Defendant(s) John Doe members of the Missouri Bar Client Security Fund Committee are appointed by the Missouri Bar Board of Governors to consider claims of former clients and render decisions regarding such claims.

7. Defendant State of Missouri has relegated the responsibility for the licensure of attorneys to the Supreme Court of Missouri and has relegated the responsibility for licensure of all other professions to the Missouri Division of Professional Registration.

8. In addition to their judicial duties, each individual member of the Supreme Court has accepted the administrative, non-judicial role as Missouri's licensing authority for attorneys seeking to practice law in the state of Missouri. Many of the administrative functions have been passed on by the Supreme Court to others, including other named defendants to this action.

9. All acts complained of were carried out by Defendants under color of state law.

10. All individual defendants are sued in their individual and representative capacities as licensing authorities for the State of Missouri.

11. The State of Missouri has 42 professional license categories. 41 of these professions are licensed and regulated through the Missouri Division of Professional Registration, which has the following mission, according to its website:

> **"Who We Are ...**
> The Division of Professional Registration is an agency within the Missouri Department of Insurance, Financial Institutions & Professional Registration. The division is comprised of 216 staff members that support 41 professional licensing boards and commissions in licensing and regulating the activities of approximately 430,000 professional Missourians.
>
> **What We Do ...**
> The boards and commissions process applications, administer examinations issue licenses and, when warranted, conduct investigations into possible professional misconduct and may suspend or revoke the licensure of practitioners.
>
> **Our Mission ...**
> It is the mission of the Division of Professional Registration to serve and protect the public by providing an accessible, responsible and accountable regulatory system that:
>
> - Protects the public . . . from incompetency, misconduct, gross negligence, fraud, misrepresentation or dishonesty;
> - Licenses only "qualified" professionals . . .by examination and evaluation of minimum competency;
> - Enforces standards . . .by implementing legislation and administrative rules;"

12. 41 Missouri licensed professions share in common the 'what we do' portion of the Division of Professional Registration, as outlined above.

13. For 41 of the 42 professions requiring licenses in the state of Missouri, the granting of or the refusal to issue a professional license is an administrative governmental function carried out by the Executive Branch of government.

14. Missouri case law has developed from proceedings in front of the various licensing and regulatory boards, as well as the Administrative Hearing Commission, the hearing board for licensing and regulatory requirements for these 41 professions, including the disciplinary proceedings against license holders. Over the years, a wealth of licensing protocol and policy has been created - and consequently a wealth of legal precedent developed - through licensure and disciplinary proceedings; including time limits, statutes of limitation, minimum requirements and legal rules of application that have all been interpreted and developed with respect to these professional licensure actions.

15. All professional license holders have minimum requirements that applicants must meet to be eligible to obtain a license. For example, a Real Estate license 'shall' be granted 'only to persons who present' …. satisfactory proof to the commission that they (1) are persons of good moral character, and (2) bear a good reputation for honesty, integrity and fair dealing; and (3) are competent to transact the business of a broker or salesperson in such a manner as to safeguard the interest of the public.

16. When an application for admission as a license holder for any profession subject to the Missouri Division of Professional Registration is denied to a particular license seeker, a detailed explanation of the reason for the denial and corresponding

information regarding the applicant's appeal rights must be provided to the applicant.

17. Many of the regulated professions, including Real Estate licenses, require 'evidence' or 'proof' to the particular licensing board of 'good moral character' and 'a good reputation' in order to obtain a license.

18. After a license has been suspended by a corresponding licensing board, the applicant may reapply when he or she meets threshold minimum time periods and statutory or court imposed minimum requirements.

19. All limitations imposed by the State of Missouri regarding the processing of an application for any professional license are subject to legal challenge using the administrative hearing process through the Missouri Administrative Hearing Commission, and then – if necessary, through judicial proceedings.

20. The only Missouri profession requiring licensure that is not subject to the provisions of the Division of Professional Registration is that of Attorney. The State of Missouri has relegated the state licensure of attorneys to the judicial branch of government, which has passed many of those responsibilities on to others, including other named defendants to this action, all appointed by the judicial branch. As a result, the judicial branch is the only branch of government permitted the sole 'regulation' of its own members. No 'checks and balances' of any kind exist; the Supreme Court of Missouri maintains its own licensure proceedings, as well as taking responsibility for the continued membership and discipline of members of the legal profession in the state of Missouri.

21. The effort to allow the legal profession to regulate itself is as old as the practice of law. In Missouri, the effort is usually explained as an effort to make the profession 'non-political.'

22. In contrast to every other profession, an applicant for a license to practice law is not entitled to a detailed reason for the denial of a license to practice law; or the suspension or permanent removal of a license to practice law, and there is no appellate process for any decision made by the Supreme Court regarding such denial, suspension or permanent removal of a license to practice law.

23. The regulation of lawyers in a manner different than other professions makes the legal profession far more subject to political and/or unjustified decisions than the other professions. This is particularly true when no reasoning or explanation, or detailed ruling of the denial is required or provided by the licensing authority. In fact, it is quite common to see one-word Supreme Court decisions regarding attorney licensure. Quite unbelievably, this means that all seven Missouri Supreme Court Justices are always in absolute agreement as to the vast majority licensing actions brought before the court, with zero commentary or even contrary justification for the agreement/disagreement as to what constitutes an adequate reason to deny, suspend or remove a license to practice law in the state of Missouri.

24. As a result of the failure of defendants to provide any reason, argument or justification for the denial, discipline or removal of a license, a person subject to such decision often has no idea what he or she must do to provide 'clear and convincing' evidence to the Court that he or she is or will be eligible for a license in the future. No other profession is subject to such an arbitrary decision-making

process, and the Court itself would never allow such to occur in other professions, as is clear from the Court's review of countless executive branch licensure actions taken through the Missouri Division of Professional Registration for other professions.

25. The legal profession in Missouri allows decisions regarding attorney licensure to be made without reasoning, legal argument or justification. With extremely rare exception, precedential rulings are not issued regarding the licensing of attorneys. As a result, an applicant denied licensure has absolutely no way of knowing what issue, fact or reason led the Court to deny a license. This is not true for any other profession. In point of fact, attorneys everywhere would have a field day making arguments for any other professional license seeker denied licensure in a similar fashion.

26. To be sure, determinations regarding shadowy concepts such as the morality and or reputation of candidates for licensure in other professions do exist, but the legal profession has become quite comfortable with the notion of regulating itself, with members of the 'club' allowed to make ethical and reputational judgments regarding other members and/or applicants to the club, without justification, argument or reasoning. Those members of the legal club that happen to be on the 'inside' of the club, including the Supreme Court of the State of Missouri and all of its appointed delegates responsible for membership, are not required to justify their opinions regarding an applicant's reputation nor are they required to make concrete rulings that might develop legal precedent regarding such judgments.

27. With little or no exception, a person who has been disciplined as an attorney in the State of Missouri is unable to apply for application to practice law in any other state, until the license is reinstated in the state of Missouri.

28. Similarly, an applicant that has been disciplined in any other state is not permitted to seek application to practice law in the state of Missouri until the disciplined license is reinstated in the other state. As a result, an applicant determined unable to meet ethical or reputational guidelines in Missouri must remain in the state of Missouri to seek reinstatement, or forever abandon the effort, regardless of length of time that has passed and regardless of changed procedure.

29. By contrast, a non-attorney professional license holder subjected to disciplinary proceedings or the denial of an application for a professional license receives many levels of legal proceedings prior to a final adjudication and interpretation of the law. This results in the development of a healthy body of law regarding licensure and the restriction thereof.

30. By contrast, no case law or precedential meaning can be obtained from a legal process that simply grants or denies a license to an applicant for reinstatement, without commentary, argument or explanation.

31. Checks and balances of governmental decision-making has been abandoned for the legal profession in the State of Missouri.

Professional Licensure and Discipline in the State of Missouri Particular to Plaintiff

32. Plaintiff Samuel Trapp applied for and was granted a license to practice law in the State of Missouri in 2001, license number 52617.

33. For 14 years, Plaintiff practiced law in the state of Missouri.

34. Prior to May 7, 2014 a disciplinary proceeding regarding Plaintiff was instituted by the Office of Chief Disciplinary Counsel alleging numerous violations of the Rules of Professional Conduct.

35. Plaintiff believes he was targeted in this process by Sam Phillips of the office of Chief Disciplinary Counsel, and believes that the decision as to who gets targeted for discipline is subject only to the whim of the investigator. Although not necessarily a part of this case, exactly how individual persons are targeted for the formal complaint process and others are ignored is an area fraught with inconsistency.

36. As part of the disciplinary process, a three-person panel was created to hear the complaint(s) against Plaintiff, to consider the nature of Plaintiff's violations of the Rules of Professional Conduct and to make a recommendation to the Supreme Court regarding the discipline of Plaintiff.

37. During that process, and in an effort to resolve the matter, the parties entered discussions to resolve the issues that led to the complaints. As part of that process, Plaintiff was offered a term of probation of his license if he would admit to the violation of a Rule of Professional conduct for taking an interest contrary to the interests of a particular client, in that Plaintiff took a financial and possessory interest in the home of the mother of Plaintiff's Client.

38. Plaintiff would not admit that he took an interest contrary to his client by encumbering the property of that client's relative, although he did offer to admit to the rest of the allegations against him in exchange for a period of probation.

39. The issue regarding whether a lien could be placed against property owned by a client's relative was widely publicized in a Missouri legal publication in November 2013, *Missouri Lawyers Weekly*, when the publication published a multi-page article regarding the disciplinary proceedings against Plaintiff.

40. The three-person disciplinary panel offered a recommendation to the Supreme Court of the State of Missouri after a hearing, which did not include a recommendation to disbar or suspend Plaintiff's license to practice law indefinitely and did not include any discipline for taking an interest in the property of the mother of Plaintiff's client.

41. The Office of Chief Disciplinary Counsel filed a brief with the Supreme Court recommending that the Court not follow the recommendation offered by the Panel and asking review of the question regarding the property issue.

42. Plaintiff's attorney filed a brief on the issue as well.

43. After review and oral argument, the Court did not follow the recommendation of the Panel in making its decision regarding the discipline of Plaintiff's license to practice law, entering its Order suspending Plaintiff's license to practice law indefinitely on October 14, 2014, with the right to reapply for reinstatement after one year.

44. On December 23, 2015, being fully eligible for reinstatement under the Rules in effect at that time, Plaintiff applied for the reinstatement of his license to practice law before the Supreme Court of the State of Missouri, case number SC95445.

45. On August 22, 2017, over 18 months after the application for reinstatement was filed, the Court entered its Order denying Plaintiff's Application for Reinstatement.

46.   The Order denying Plaintiff's Application was a one-word decision which contained no opinion, legal summary, or discussion of any kind. It just recorded that the Application was denied, with no indication of the Court's reasoning and with no indication of what, if anything, was missing from Plaintiff's Application that would or could have led the Court to come to a decision favorable to Plaintiff, and no discussion as to the reasoning of the Court.

47.   In the original Order suspending Plaintiff's license to practice law, Plaintiff was found to have violated four Supreme Court rules in that (1) he failed to communicate with a client, (2) and (3) he failed to cooperate with the investigators of the Missouri Bar and (4) he had 'potentially' co-mingled his own funds with those in his client trust account. Without downplaying the seriousness of any of the violations either individually or collectively, it bears pointing out that on an individual basis, any one of these violations routinely do not result in the suspension of an attorney's license to practice law. Additionally, although Plaintiff fully accepts the decision of the Court regarding his discipline, it should be noted that in the disciplinary case, there was significant dispute regarding Plaintiff's efforts to communicate with the client in question, and with Plaintiff's efforts to cooperate with the investigative authorities. Additionally, the co-mingling was the result of substandard accounting, not the result of any 'taking' by Plaintiff of any client fund or property. No client, prior client or disciplinary authority has ever alleged that Plaintiff misappropriated any fund or property from any client.

48. In its original Order regarding the suspension of Plaintiff, the Court did not find that Plaintiff violated any Rule regarding the taking of any interest contrary to any client.

49. Plaintiff was unable to determine from the orders of the Supreme Court of the State of Missouri exactly why he was not able to obtain a license to practice law in the state, nor was he aware of what steps he should take prior to submitting his next application in order to make his second effort successful.

50. Similarly, because specific rulings were not issued by the Court when Plaintiff's license was suspended, Plaintiff has never been able to determine with specificity what he did that constituted violation of any of the particular rules violated by him that were in place at the time such rule was violated.

51. For example, in its Order regarding the suspension of Plaintiff, the Court found that Plaintiff violated Rule 4-1.4 regarding communication with a client, but did not outline exactly how plaintiff violated that Rule or how he failed to communicate with that particular client.

52. Rule 4-1.4 was changed effective September 26, 2017.

53. Rule 4-1.4 as it existed at the time of Plaintiff's violations outlined numerous points regarding communication with clients, but no specific finding was made by the Court that would allow the identification of the particular action or failure to act of Plaintiff that constituted the violation of Rule 4-1.4 as it existed at the time of the violation.

54. Generally, Plaintiff is aware of the particular client and the allegations made by that particular client regarding his failure to communicate as required by Rule 4-1.4 and

Plaintiff has accepted the fact that he could have done more to communicate effectively with that particular client, although Plaintiff cannot with specificity identify the exact conduct or misconduct that constituted his failure to communicate with that particular client.

55.    Plaintiff accepts the punishment he received for violation of Rule 4-1.4 even though he cannot identify what specific conduct constituted his failure.

56.    Plaintiff cannot identify whether his license to practice law was suspended for the violation of Rule 4-1.4 as it existed at the time of the violation or whether his license to practice law was suspended for the violation of Rule 4-1.4 as it existed at the time the Court entered its Order suspending his license to practice law.

57.    Many other Missouri attorneys have been found to have violated Rule 4-1.4, both as it existed at the time of the violation of such Rule by Plaintiff and at the time of the entry of the Order suspending Plaintiff's license, most receiving minor admonishment or reprimand. Attorneys generally do not have their license to practice law suspended indefinitely for violation of Rule 4-1.4 and/or have been granted reinstatement much more swiftly than Plaintiff.

58.    In its Order, the Court found that Plaintiff violated Rule 4-1.16(d) regarding termination of representation, which states:

> (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

59. Rule 4-1.16(d) outlines numerous points regarding termination of representation, but no specific finding was made by the Court that would allow the identification of the particular act or failure to act of Plaintiff that constituted the violation of Rule 4-1.16(d).

60. Generally, Plaintiff is aware of the particular client and the allegations made by that particular client regarding the termination of his representation of that particular client and has accepted the fact that he could have taken more appropriate actions after the termination of his representation of that particular client, although he is unable to identify what specific conduct or failure to act constituted the violation of Rule 4-1.16(d).

61. Plaintiff accepts the punishment he received for violation of Rule 4-1.16(d) even though he cannot identify what specific conduct constituted his violation of that rule.

62. Other Missouri attorneys found to have violated Rule 4-1.16(d) receive minor admonishment or reprimand, generally do not have their license to practice law suspended indefinitely and/or have been granted reinstatement much more swiftly than Plaintiff.

63. In its Order, the Court found that Plaintiff violated Rules 4-1.15, 4-1.15(c), 4-1.15(j) regarding safeguarding of client property.

64. Rule 4-1.15 has substantially changed since October 14, 2014, with three changes in all (March 7, 2016, effective July 1, 2016; December 24, 2016, effective January 1, 2017 and July 23, 2018, effective January 1, 2019).

65. Rule 4-1.15 as it existed at the time of the original Order, outlined numerous points regarding the safeguarding of client property, but no specific finding was made by the Court that would allow the identification of the particular action or failure of Plaintiff that constituted the violation of Rule 4-1.15 as it existed at the time of the violation.

66. Other than the general violation of the rule regarding safeguarding client property, no specific allegation by any client or on behalf of any client was complained of in the disciplinary proceeding.

67. No particular client claimed that Plaintiff lost or failed to safeguard any property of that particular client, nor was any client property lost or misappropriated by Plaintiff.

68. Plaintiff is aware of the circumstances that led to his discipline regarding his general failure to properly safeguard client property by establishing particular procedures in his practice that would have made the tracking of transactions on behalf of particular clients possible. Plaintiff has accepted the fact that he could have established far more appropriate office accounting procedures to avoid the possibility that client property could potentially be unaccounted for, even though no client specifically claimed of, or was even aware that Plaintiff's internal accounting procedures could have led to Plaintiff's inability to track a particular client's payment.

69. Plaintiff accepts the punishment he received for violation of Rules 4-1.15, 4-1.15(c), 4-1.15(j) even though he cannot identify exactly what specific conduct constituted

70. Many other Missouri attorneys found to have violated Rules 4-1.15, 4-1.15(c), 4-1.15(j), both as they existed at the time of the violation of such Rules by Plaintiff and at the time of the entry of the Order suspending Plaintiff's license receive minor admonishment or reprimand, generally do not have their license to practice law suspended indefinitely, and/or have been granted reinstatement far more swiftly than Plaintiff.

71. Finally, the Court found that Plaintiff violated Rule 4-8.1, which states:

> An applicant for admission to the bar or a lawyer in connection with a bar admission application or in connection with a disciplinary matter shall not:
> (a) knowingly make a false statement of material fact; or
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter; or
> (c) knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule 4-8.1 does not require disclosure of information otherwise protected by Rule 4-1.6.

72. In the disciplinary pleadings, it was alleged that Plaintiff had failed to respond in a timely manner to a request for information that was eventually supplied several weeks late. Plaintiff is unaware of the existence of any allegations regarding knowingly making false statements, failing to disclose facts or completely failing to respond.

73. Rule 4-8.1 outlines numerous points regarding the requirements for participation in disciplinary matters, but no specific finding was made by the Court that would allow the identification of the particular action or failure of Plaintiff that constituted the violation of Rule 4-8.1. Plaintiff was never accused of making a false statement, failing to correct a misapprehension, or of completely failing to respond.

74. Generally, Plaintiff is aware of the circumstances that led to his general discipline regarding his failure to cooperate with the investigative authority and has accepted the fact that he could have done more to be seen as fully cooperative.

75. Plaintiff accepts the punishment he received for the violation of Rule 4-8.1, even though he cannot with specificity outline what specific act or failure to act constituted the violation.

76. Other Missouri attorneys found to have violated Rule 4-8.1 receive minor admonishment or reprimand, generally do not have their license to practice law suspended indefinitely and have been granted reinstatement much more swiftly than Plaintiff.

### Plaintiff's First Petition for Reinstatement

77. On December 23, 2015, Plaintiff filed his first petition for the reinstatement of his license to practice law in the Supreme Court of Missouri, Case #SC95445 – *In Re: Samuel E. Trapp, Petitioner*.

78. Plaintiff's petition to reinstate was fully compliant with Missouri Supreme Court Rule 5.28 (July 1, 2011 version) regarding readmission.

79. Missouri Supreme Court Rule 5.28 regarding readmission was completely rewritten after Plaintiff submitted his first Petition for Reinstatement to the Court, with such modifications of Rule 5.28 becoming effective on August 4, 2017.

80. On August 22, 2017, less than three weeks after the rules regarding readmission changed substantially, the Supreme Court issued its Order denying Plaintiff's first petition for reinstatement.

81. No reason, opinion or justification was stated for the denial of Plaintiff's petition, and no formal Opinion of the Court was issued.

82. Plaintiff cannot identify whether his first Motion to Reinstate was denied under Rule 5.28 as it existed at the time of the violation(s) that resulted in the suspension of his license to practice law, or whether his Motion to Reinstate was denied by the Court under Rule 5.28 as it existed at the time the Court entered its Order denying Plaintiff's Motion to Reinstate.

83. Plaintiff has no idea why the process took so long, and other professional license holders in the state of Missouri are never delayed so long, particularly without justification. Defendant members of the Supreme Court clearly treat licensing decisions as judicial, non-administrative processes. They are not.

84. During the first reinstatement request, Plaintiff outlined one particular portion of inquiry that Plaintiff believes to be unconstitutional regarding the Client Security Fund, as outlined further below.

85. Immediately after the suspension of Plaintiff's license to practice law, many prior clients were encouraged to submit requests for 'refunds' of fees under procedures for the Client Security Fund, a fund established under Supreme Court Rules.

86. Since the Court required a list of all of the clients of Plaintiff at the time he surrendered his license, Plaintiff believes all were encouraged to apply for refunds by the Court itself, or by other named defendants.

87. As outlined by Plaintiff during such proceedings, neither he nor his attorney were permitted to participate in any proceeding regarding such prior client refund requests.

88. No Rule requires that a prior license holder provide the Client Security Fund any payment for any amount expended to a former client after any such former client request to be eligible for reinstatement.

89. However, after consulting with attorneys that practice in the area of attorney licensing, they admit that no rule regarding 'repayment' of such claims exists under the rules, but that 'everybody knows' that the Court wants such funds expended by the Fund to be to be 'reimbursed' by the attorney applicant, even though the funds are expended by the Fund without input necessary by the former license holder.

90. Plaintiff believes the procedures relative to the Client Security Fund are completely without constitutional protections for the prior license holder, and provided that argument in great detail to the Supreme Court during his first motion for reinstatement.

91. The current version of Rule 5.28(j) states in relevant part that '(w)hen the court denies a reinstatement petition, it *may* (italics added) state a period of time before which another petition will be considered. It *may* (italics added) also provide guidance to the petitioner as to particular concerns or conditions that the petitioner should address before submitting another petition for reinstatement.' The Supreme Court is not so cavalier when reviewing denial of a licensure request in other profession, and requires detailed reasons for denial of licensure..

92. The Missouri Supreme Court did not state a period of time before which a petition would be considered when it issued its Order on August 22, 2017.

93. The Missouri Supreme Court did not provide guidance to the Plaintiff as to particular concerns or conditions that the petitioner should address before

submitting another petition for reinstatement when it issued its Order on August 22, 2017.

94. Having not been given a reason for the denial of his Application for Reinstatement, Plaintiff can only guess as to why the Petition for Reinstatement was denied by the Missouri Supreme Court.

95. Plaintiff believes his Motion to Reinstate was denied only because of his thoughts on the unconstitutional nature of the Client Security Fund process.


Plaintiff's Second Petition for Reinstatement

96. Plaintiff filed a second petition for reinstatement on September 26, 2017.

97. Plaintiff's petition was fully compliant with Rule 5.28 as it was in effect on September 26, 2017.

98. On October 5, 2017 Sam Scott Phillips entered his appearance on behalf of the Office of Chief Disciplinary Counsel. More than twenty-one months passed before Mr. Phillips filed pleadings of any kind in the case.

99. The process for reinstatement completely changed between the time Plaintiff filed his First Petition for Reinstatement and the time he filed the Second Petition.

100. Notable in the new process for reinstatement is the requirement for the filing of a document entitled Disciplinary Form A, which states that it reflects the 'Threshold requirements for readmission under Rule 5.28.'

101. Plaintiff met the threshold requirements for readmission under Rule 5.28 at the time his second Application for Reinstatement was filed with the Supreme Court of the State of Missouri, including those listed in Disciplinary Form A.

102. Disciplinary Form A outlined a significant change in the Rules – particularly regarding the standard of proof applied, in that the Applicant now bears the burden to establish, by clear and convincing evidence (instead of the prior standard of satisfactory proof similar to all other Missouri professions), that he/she has good moral character, and that the best interest of the public will be served by his/her reinstatement to practice law.

103. Disciplinary Form A also states that the petition will be referred to the Chief Disciplinary Counsel for investigation and *may* be referred to the Board of Law Examiners for a character and fitness investigation (italics added). According to the Form, the Applicant must also cooperate with any investigation and *timely* provide additional documentation as required by the Chief Disciplinary Counsel and the Board of Law Examiners. No Rule requires any investigative authority or the Court itself to act in a timely manner.

104. Plaintiff submitted his completed documentation as requested in January 2018. The Office of Chief Disciplinary Counsel accepted the completed packet. Plaintiff inquired of Sam Phillips whether there were any deficiencies in his packet, and none were noted.

105. Upon information and belief, no time limit exists for the Board of Legal Examiners to conduct an inquiry.

106. Additionally, Plaintiff is aware of no time limit into Plaintiff's past that the Board of Legal Examiners must adhere to while conducting its review on behalf of the Supreme Court of the State of Missouri.

Nature of the Investigation

107.  According to the Missouri Bar, reinstatement investigations are tailored to answer the question whether the misconduct that caused the license interruption has been rectified.

108.  On October 14, 2014, nothing in Plaintiff's practice or personal life prior to that date was the subject of disciplinary proceeding by the Office of Chief Disciplinary Counsel, other than the items complained of in the original disciplinary proceeding for which Plaintiff's license to practice law was suspended in the Order of suspension on the same date.

109.  During the proceedings for the second reinstatement request under the new proceeding, the application, Disciplinary Form A and other documents in the process made numerous requests for information from the period prior to the date upon which Plaintiff's license to practice law was suspended.

110.  No subject area was limited in the investigation into Plaintiff's past, with Plaintiff being required to submit a global release for information from any source for any time period, without limit.

111.  No time limit exists during which the Court, through its appointees at the Missouri Bar, the Missouri Office of Chief Disciplinary Counsel and the Missouri Board of Law Examiners is required to process reports and recommendations, or to obtain and produce character and fitness reports.

112. No rule or condition exists that limits how far into the Plaintiff's past the Court, through its appointees at the Missouri Bar, the Missouri Office of Chief Disciplinary Counsel and the Missouri Board of Law Examiners may delve into the 'background' of attorneys whose license has been subject to discipline, even though the supposed focus of the reinstatement process is conduct of the attorney after the date of his or her suspension.

113. More than 26 months after Plaintiff filed his second Motion for Reinstatement, Sam Phillips provided a Report and Recommendation to the Supreme Court, which was no different than the Report and Recommendation that he filed three years previously during the proceedings relative to Plaintiff's first request for reinstatement.

Client Security Fund

114. Disciplinary Form A, which establishes the threshold requirements for reinstatements asks in question 5 whether the applicant for reinstatement has 'paid restitution to all persons injured as a result of the conduct that led to suspension or disbarment, or their claims have been discharged by operation of law, or [the Applicant has] notified the injured persons of the intent to file this petition at least 10 days but not more than 90 days before the date of this petition.'

115. As no restitution was ordered to be repaid by Plaintiff to any client, former client or other party by any court in the state of Missouri, plaintiff responded that this section did not apply to him.

116. But later, in a supplemental form supplied to Plaintiff by the Board of Law Examiners, the Applicant was asked to provide 'evidence from The Missouri Bar's

Client Security Fund showing that [he/she] … reimbursed the [Client Security] Fund for all payments made relating to [his/her] practice or discipline.

117. No Supreme Court Rule regarding reinstatement under Rule 5.28 requires Plaintiff to reimburse any funds paid by a third-party organization to any former client relating to his practice or discipline, and Plaintiff so stated in his response.

118. Plaintiff has not been ordered by any Court, including the Supreme Court of the State of Missouri, to reimburse any amount of money paid to any client by the Client Security Fund.

119. The Board of Governors of The Missouri Bar created the Client Security Fund in 1966.

120. The Fund is maintained by appropriations from the annual enrollment fees paid by each member of The Missouri Bar.

121. The fund also accrues interest and receives 'restitution payments' from lawyers seeking reinstatement.

122. A six-member Client Security Fund Committee operates under rules established by the Board of Governors of the Missouri Bar.

123. The committee may recommend payment of a claim made by a client or former client, in full or in part, or may recommend denial of a claim made to the Fund.

124. All payments recommended by the committee are subject to review by the Board of Governors.

125. The Board retains full discretion regarding payment of any claim.

126. The Regulations and Rules of Procedure of the Client Security Fund Committee only permit payments for certain types of 'wrongful' conduct.

127. Plaintiff has not been accused of any wrongful conduct by the Client Security Fund, nor has he been notified of any requirement to reimburse the Fund for any payment made to any client or former client resulting from any wrongful conduct related to his discipline or practice, other than through this investigation process. Plaintiff is aware of no collection efforts that have been initiated.

128. Plaintiff has not been the subject of any disciplinary proceeding as the result of any procedure or process instituted by the Client Security Fund relative to any former client of Plaintiff seeking funds from the Fund.

129. According to its website, 'compensation' is not available to clients or former clients for fee disputes or cases of malpractice, only for findings of 'wrongful' conduct by the Committee. No Court makes findings of 'wrongful' conduct in connection with such compensation requests, but payments are only authorized by the 'finding' of some sort of wrongful conduct by the Committee.

130. To Plaintiff's knowledge, the Supreme Court does not participate in the Fund process at all, and merely acts as the administrative enforcer in the demand for 'reimbursement' of expenditures when making licensing decisions, by tying admission to the demand for payment prior to reinstatement.

131. As a prerequisite for payment to a client for any claim submitted to the Client Security Fund, the attorney complained of must be disbarred, suspended, deceased or adjudicated mentally incapacitated.

132. Neither version of Supreme Court Rule 5.28 requires any attorney applying for reinstatement to address or reimburse any amount paid out to a former client by the Client Security Fund.

133. The version of Rule 5.28 effective August 4, 2017 mandates the use of Disciplinary Form A.

134. Answering affirmatively to all of the questions on Disciplinary Form A is a prerequisite for eligibility for reinstatement.

135. Disciplinary Form A does not request information regarding any proceeding of the Client Security Fund.

136. But instruction C to Disciplinary Form A states that '(p)etitions will be referred to the Chief Disciplinary Counsel for investigation. An additional questionnaire requiring further documentation will be provided at that time.'

137. Plaintiff submitted Disciplinary Form A along with the Petition for Reinstatement filed September 26, 2017, answering all questions in the Affirmative.

138. After submitting Form A and his Petition for Reinstatement to the Missouri Supreme Court, Plaintiff received a form from the office of Chief Disciplinary Counsel entitled the "Application for Character and Fitness Report Pursuant to Rules 5.28 and 8.05."

139. The instructions of that form required Plaintiff to 'fully answer each paragraph.'

140. Question 12F of the twenty-five page form requires the Applicant to '(p)rovide evidence from the Missouri Bar's Client Security Fund showing that you have reimbursed the Fund for all payments made relating to your practice discipline.'

141. Neither disciplinary Form A nor the Supplemental Questionnaire were used in Plaintiff's prior request for reinstatement, nor did they exist at the time of his initial discipline in 2014.

142. None of the findings of the Missouri Supreme Court in its Order regarding the suspension of Plaintiff on October 14, 2014 relate to any of the claimants that filed claims with the Client Security Fund.

143. Plaintiff is aware that former clients were encouraged by members of the Bar, the Office of Chief Disciplinary Counsel and others to file claims with the Missouri Bar Client Security Fund after his discipline.

144. Plaintiff is further aware that some of those claimants were successful in obtaining payments from the Missouri Bar Client Security Fund.

145. Payments made by the Client Security Fund to Plaintiff's former clients were a part of the argument in the recommendation of the Office of Chief Disciplinary Counsel in the reinstatement request filed December 23, 2015, but the Court did not provide a reason for the denial of Plaintiff's Petition for Reinstatement, thus Plaintiff cannot determine whether his Petition was denied for his failure to provide funds to the Missouri Bar Client Security Fund.

146. In 2010, and Article entitle "Righting Wrongs: The Missouri Client Security Fund" by Gary Toohey was published (Attached as Ex. A). The Article, as well as the Funds website, outlines that payments may only be obtained by former clients if the attorney is guilty of "wrongful conduct."

147. Plaintiff is unaware of how much the fund paid out to his former clients, but has been informed that the amount is over $60,000.

148. Plaintiff saw one of the former clients that received her entire fee back from Plaintiff's representation of her several years earlier at a career fair. She claimed that she was encouraged by the Fund to both submit her claim and to say bad things

about Plaintiff. Plaintiff has no idea what was actually said about him by any of the claiming clients to make their claims successful, as he was not allowed to participate in the claim process, nor was he permitted to file any suggestion against repayment, nor was he allowed to be represented during the process.

149. Plaintiff took employment out of the country in 2015 for a one-year contract and was even unaware of many of the claims that were processed.

150. Plaintiff's associate at the time of his suspension was a new attorney named Angela Silvey.

151. Angela was married to a former State Representative and then State Senator Ryan Silvey.

152. Angela Silvey 'took over' Plaintiff's office and encouraged former clients to file complaints. (The 'take over' of Plaintiffs office - which included working with the office landlord to negate his lease, converting all of Plaintiff's furniture and equipment as her own and employing his paralegal in her 'new' office - was not voluntary.)

153. Plaintiff believes Angela Silvey provided inaccurate information and outright lies to former clients, to the Fund and to the Office of Chief Disciplinary Counsel and encouraged former clients them to file claims so that they could retain her with funds they might receive from the Fund.

154. The Rules of the Client Security Fund do not allow Plaintiff to participate in any Committee meeting where any particular claim was discussed.

155. Plaintiff provided written responses to some of the claims as he became aware of them and requested to be informed of any hearing regarding any particular claimant,

but Plaintiff was unaware of many of the claims. Even at the time he received initial communication regarding claims, Plaintiff railed about the unconstitutional nature of the proceedings in his responses. Plaintiff was ignored at all levels.

156. Plaintiff is aware that some claimants were invited to participate in meetings with the Client Security Fund Committee either in person or by telephone. Plaintiff was provided no notice of any such meeting, nor was he permitted to participate in any such meeting.

157. The Rules of the Client Security Fund do not allow any person complained of to cross examine any claimant prior to any decision made by the Committee to grant or deny the claim of any particular claimant.

158. Plaintiff was not permitted to cross examine any claimant prior to any decision made by the Committee to grant or deny the claim of any particular claimant.

159. The Rules of the Client Security Fund do not allow Plaintiff to be represented by counsel, to provide argument, to appear and make a statement on his own behalf or to dispute any particular claim.

160. Plaintiff provided multiple written communications regarding the lack of procedural safeguards of the Rules of the Client Security Fund multiple times throughout the process to multiple participants in the process, including the Supreme Court of Missouri in his response to the recommendations of the Office of Chief Disciplinary Counsel that were submitted during both reinstatement proceedings before the Supreme Court.

161. Plaintiff was represented by counsel during the first reinstatement process.

162. Plaintiff's counsel requested to participate in meetings or hearings regarding particular claimants and was informed that the Rules do not allow or require participation by those complained of nor is counsel for such individuals authorized to participate.

163. Plaintiff has not been notified of any wrongful conduct attributable to him regarding any claimant that submitted a claim to the Client Security Fund.

164. None of the activities that the Fund found as 'wrongful' and which resulted in the payment of sometimes very large amounts of money to individual clients were part of any disciplinary process.

165. No Court has ever found Plaintiff to have engaged in any 'wrongful' conduct relative to any client that made a claim to the Client Security Fund, nor has he been informed of any 'wrongful' conduct attributable to him regarding any client that received money from the Fund through any disciplinary inquiry or proceeding.

166. Plaintiff has not been notified of any wrongful conduct attributable to or relating to any practice discipline to which he was subjected regarding any claimant that submitted a claim to the Client Security Fund.

167. Plaintiff has no way of knowing whether his first Applications for Reinstatement filed December 23, 2015 was denied for reasons attributable to the client security fund or for other reasons, as the Supreme Court of Missouri did not outline any reasoning for denial of Plaintiff's Application in its Order dated August 22, 2017.

168. During Plaintiff's second reinstatement request, Plaintiff asked for guidance regarding what actions he could take to be granted licensure by the Supreme Court.

169. In its Order denying Plaintiff's second request for reinstatement more than 26 months after the application was filed, the Court stated only the following:

> 'PETITION FOR REINSTATEMENT AFTER DISCIPLINE DENIED.
> REINSTATEMENT WILL NOT BE CONSIDERED UNTIL THE
> MISSOURI BAR CLIENT SECURITY FUND HAS BEEN
> REIMBURSED. ORDER LETTER ATTACHED TO THIS ENTRY
> AVAILABLE TO COUNSEL FOR INFORMANT VIA SECURE
> CASE.NET. ORDER LETTER SENT TO PETITIONER VIA REGULAR
> MAIL AT TWO ADDRESSES ON THIS DATE.'

170. The Supreme Court provided no statement regarding the law of any kind, in either proceeding – although Plaintiff outlined in detail that he believes this process to be constitutionally flawed.

171. Since the only item discussed by the Court in its meager ruling regarding Plaintiff is the Client Security Fund, Plaintiff believes that is the only reason for the denial of his Application for Reinstatement.

172. Plaintiff believes that even if he does pay the Fund the amount it wrongfully paid to former clients, the Court would then (and only then) come up with other reasons to deny Plaintiff licensure. After all, no justification is required.

173. The Client Security Fund Committee consists of six members appointed by the Missouri Bar Board of Governors, which also establishes the rules for the Fund.

174. The Supreme Court is holding Plaintiff's license hostage until he agrees that this Committee's decisions in paying some former clients is appropriate and he reimburses funds paid to third parties by way of this unconstitutional Fund process.

175. Plaintiff believes that if he is to be found guilty of 'wrongful' conduct and ultimately disciplined by the Client Security Fund, he should have been permitted to participate in the process, examine witnesses, be represented by counsel and

afforded other constitutional protections.  Plaintiff received none of those protections.

Other Relevant Facts

176.  Plaintiff was not disbarred by the Supreme Court of Missouri.

177.  Plaintiff has committed no crime that would make him ineligible to practice law in the state of Missouri.

178.  Many licensees have been subject to discipline by the Supreme Court of Missouri, including both suspension and disbarment.  Many such licensees have been reinstated to the practice of law after having been found to have violated the ethical Rules in a far more serious manner than Plaintiff.  In fact, a significant number have been reinstated to the practice of law after having committed serious crimes and having served prison sentences.

179.  The state processes for licensure, discipline and reinstatement of the privilege to practice law in the State of Missouri is a moving target, with decisions at the whim of the decision-making authority, dependent only upon the person seeking reinstatement and the interest of the investigative authority in keeping specific persons, including Plaintiff, out of the practice of law.

180.  Upon information and belief, no other licensure investigative proceeding is without a time limit.

181.  RSMo §484.080 provides that the power to admit and license attorneys is vested exclusively to the Supreme Court of the State of Missouri, through its promulgated rules. No Rule established by the Supreme Court discusses the Client Security Fund.

182. The eligibility requirements to obtain licensure as an attorney in Missouri are set forth in Supreme Court Rule 8. Ineligibility is outlined in Rule 8.04. Plaintiff is not ineligible for admission under Rule 8 or any other Rule.

183. The Supreme Court Rule relative to reinstatement petitions is Rule 5.28. The rule was completely re-drafted, with the new Rule regarding reinstatement effective August 4, 2017.

184. Rule 5.28(i) states that the person [seeking reinstatement] must establish, by clear and convincing evidence, that the person is of good moral character, is fit to practice law, and the best interest of the public will be served by reinstatement of the person's license to practice law. Factors to consider in determining whether the person has met this burden include the following:

> (1) The person's acceptance of responsibility for wrongdoing with sincerity and honesty and a lack of malice toward those who brought evidence against the person;
> (2) The extent of the person's rehabilitation, as demonstrated by good current reputation for character and moral standing in the community;
> (3) The nature and severity of the misconduct leading to discipline;
> (4) The person's conduct since discipline, including strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;
> (5) The time elapsed since discipline;
> (6) Other instances of dishonesty, criminal behavior, professional discipline, unauthorized practice of law, academic and employment misconduct, financial irresponsibility, or involvement in or neglect of legal and professional matters;
> (7) The cumulative effect of all misconduct;
> (8) The person's current competency and qualifications to practice law;
> (9) Restitution;
> (10) Candor in the discipline and reinstatement processes; and
> (11) Positive social contributions since the misconduct.

185. Aside from the time lapsed since discipline, none of the eleven listed factors are objectively determined. Instead, all are very much subject to the perspective of the

person considering the factor. Even so, Plaintiff easily complies with each of the listed items. However, the 'clear and convincing standard' imposed upon applicants by the Supreme Court places an alarming burden on an applicant to prove a list of intangibles, particularly when decisions denying an attorney licensure are not provided a reason, a justification or a legal opinion.

186. None of the listed factors includes the Client Security Fund.

187. Plaintiff accepts that he was suspended and accepts the items that he was ultimately found to have engaged in by the Supreme Court during the disciplinary proceeding, but does believe the process to be seriously flawed.

188. Plaintiff has complained to the Governor of Missouri of these unconstitutional licensure proceedings, with no response provided.

189. Plaintiff has written all of the members of the Missouri House of Representatives Judiciary Committee as well. Although one member informed Plaintiff that the Missouri Supreme Court is indeed 'corrupt,' no real response has been provided by any member. Plaintiff actually visited the office of the Chair of such committee and left a message in person, but received no response at all.

190. Plaintiff has written to US Senator Josh Hawley as well, with no response.

191. The Court changed the Rules regarding admission to practice from satisfactory proof to clear and convincing evidence during the pendency of Plaintiff's discipline. However, the Court did not outline how Plaintiff failed to meet the 'satisfactory evidence' burden of proof in his first motion for reinstatement; and did not outline how Plaintiff failed to meet the 'clear and convincing' burden of proof in his second motion for reinstatement.

192. Presumably, since it is the only item commented upon in its ruling, the Court finds Plaintiff unworthy of a license to practice law because he objects to the procedures of the Client Security Fund and believes such procedures to be unconstitutional. Yet the Court makes no justification or legal opinion as to the lack of constitutional protections argued by Plaintiff during both reinstatement proceedings and completely ignored the argument.

193. During the same period that Plaintiffs license reinstatement request was pending, Missouri attorney Dee Wampler, who engaged in very serious misconduct regarding client funds, and who failed to maintain client accounts at all - or even his own trust account, was placed on probation by the Supreme Court in an order almost apologetic in its justification as to why that attorney would continue to be allowed to practice law.

194. Clearly, the denial, suspension or discipline of a license depends only upon who is making the request and is not related in any way to the type of misconduct committed.

195. The only guidance provided to Plaintiff by the State of Missouri stated that he 'reimburse' the Client Security Fund, which is apparently the only reason Plaintiff's license was not reinstated during both proceedings for reinstatement.

196. If the Court requires reimbursement of funds paid to former clients by the Client Security Fund, Plaintiff should have been permitted to participate in such former client 'refund' proceedings; should have been allowed to be represented during such former client 'refund' proceedings; and should have been able to cross examine such former clients before such former client 'refunds' were granted.

197. If, in order to eligible for reinstatement, Plaintiff is required to reimburse funds paid by a third-party organization to a third-party requestor, such should be stated in the threshold Rules for reinstatement.

198. Plaintiff believes that if the Fund had not provided funds to prior clients of Plaintiff, Plaintiff's first and second requests for reinstatement would have been granted.

199. All of the activities of the State of Missouri have meant that Plaintiff has been unable to practice law for six years instead of only one.

200. As a result of the wrongful and unconstitutional activities of Defendants, Plaintiff has suffered significant financial harm relative to the discipline of Plaintiff's license to practice law and corresponding reinstatement efforts.

<u>Plaintiffs Licensure as a Real Estate Agent and as a<br>Real Estate Broker in the State of Missouri</u>

201. In July 2018, Plaintiff applied for, and was granted a Missouri Real Estate Salesperson License.

202. In November 2020, Plaintiff applied for, and was granted a Missouri Real Estate Broker license.

203. RSMo §339.040 outlines that Real Estate licenses shall be granted 'only to persons who present' …. satisfactory proof to the commission that they (1) are persons of good moral character, and (2) bear a good reputation for honesty, integrity and fair dealing; and (3) are competent to transact the business of a broker or salesperson in such a manner as to safeguard the interest of the public.

204. The executive branch of government for the state of Missouri has twice found Plaintiff to be a person of good moral character, even though the judicial branch has twice found Plaintiff lacking only because of his refusal to accept the unconstitutional Client Security Fund process. No 'judgment' may be entered by any other administrative body for any other profession.

205. The Executive Branch would have had to provide significant reasons to deny the licensure of Plaintiff as a Salesperson in 2018 or as a Broker in 2020. The judicial branch would have accepted nothing less.

206. Upon presentation of examination, completion of an application form and a fingerprint check for criminal records, Plaintiff was issued both a license as a salesperson and later a license as a broker *on the same day he filed the application* with the licensing authority for the State of Missouri, the Missouri Real Estate Commission.

207. The State of Missouri accepted the proof submitted by Plaintiff that he is a person of good moral character and bears a good reputation for honesty, integrity and fair dealing, and that plaintiff is competent to transact the business of a broker or salesperson in such a manner as to safeguard the interest of the public.

208. Apparently, a person deemed unethical by one branch of government can be deemed ethical by another branch and ethics do not cross professions.

209. Plaintiff met the satisfactory proof burden for ethics for good moral character by the state of Missouri in July 2018; then failed in January 2020 to meet the clear and convincing standard imposed unconstitutionally by the Supreme Court of Missouri only because of his refusal to submit to the unconstitutional Fund process; and then

in November 2020 was again found under the satisfactory proof burden of proof to be both moral and ethical. Unfortunately, there is absolutely no way for Plaintiff (or anyone else for that matter) to tell exactly how plaintiff failed to meet that burden from the substandard decision-making process The Supreme Court uses in its administrative processes for the licensure of attorneys. Plaintiff believes the Court should stick to making decisions judicially, a process which this Plaintiff greatly honors, and leave administrative processes to qualified and trained administrators not appointed by the court itself.

<u>COUNT I (Procedural and Substantive Due Process Violations)</u>
Violation of Plaintiffs Rights as Guaranteed by the Constitution and
Laws of the United States and the State of Missouri

For Count I of his claim, Plaintiff makes claim under 42 USC §1983 against all defendants and provides the following allegations:

210. Professional Licensure proceedings are administrative, non-judicial acts.

211. Professional licensure, discipline and reinstatement activities are required to afford Plaintiff Procedural and Substantive Due Process as guaranteed by the Constitution and laws of the United States of America and the State of Missouri.

212. During the removal and reinstatement processes for the discipline and grant of a license to practice law to Plaintiff, defendants acted arbitrarily and unconstitutionally failed to provide Plaintiff procedural and substantive due process protections during such processes, in that defendants:

    a. Provided Plaintiff no specific description of the conduct violated by Plaintiff that subjected him to discipline.

b. Provided Plaintiff no specific reason for the denial of his request to reinstate his license to practice law during proceedings for either such request.

c. Without judgment entered, require Plaintiff to 'reimburse' funds paid by a third-party organization to a third-party individual to be eligible for licensure; with no right to examine witnesses, no right to be represented by counsel, and no right to appeal the administrative decision.

d. Specified no particular act or acts, and/or described no particular failure(s) to act that constituted Plaintiff's violation(s) of ethical rules that led to the loss of Plaintiff's license to practice law. Plaintiff knows the number of the rule he violated, but has no idea what particular act(s) or failures to act constituted the violation of such Rule.

e. Changed the application process Plaintiff was required to complete to be reinstated and applied the Rules retroactively to Plaintiff.

f. Accused and apparently found Plaintiff guilty of unidentified 'wrongful conduct' resulting in the payment of funds to third-party applicants, and require Plaintiff to pay such amounts to the Missouri Bar Client Security Fund to be eligible for licensure, even though Plaintiff was afforded no right to participate in the Fund process, cross examine witnesses, make statements on his own behalf, present witnesses or otherwise participate in the proceedings wherein such 'wrongful conduct' was determined, and such payments were granted to former clients.

g. The failure of defendants to outline with particularity the reason for denial of Plaintiff's Applications for Reinstatement provided Plaintiff no idea what, if any, particular act led to the refusal to reinstate his license and what steps, if any, were/are required of him to be granted licensure in the future.

h. The failure of defendants to outline standard parameters of investigation into a Plaintiff's background during the licensure process, including how far into the past Plaintiff may be investigated, wheat areas of inquiry may be investigated, which allowed Defendant Sam Phillips to target Plaintiff for special scrutiny and take as long as he desired for such process.

i. The failure of Defendant State of Missouri to establish a time limit for the conduct of an investigation into Plaintiff's background allowed for indefinite `investigation' of Plaintiff, but the speedy reinstatement of other applicants.

j. The failure of defendants to differentiate between the Supreme Courts' administrative activities and its judicial activities in the issuance or denial of licensure to applicants.

k. The failure of defendants to provide an appeal process for attorney licensure decisions.

l. The decision-making process for Plaintiff was completely arbitrary in that the State of Missouri went out of its way to justify the retention of license by others whose conduct was far worse that Plaintiffs, yet Plaintiff's license was removed indefinitely for minor infractions that others are

either not punished for at all, or for which those who violate receive only minor punishment.

m. The state of Missouri cannot differentiate between the ethics of attorneys and the ethics of real estate brokers, allow one branch to find Plaintiff ethical and another branch to find him unethical at the same time.

n. Defendants changed the standard of proof required of Plaintiff for reinstatement between the first and second reinstatement requests, and or applied such standards retroactively to Plaintiff.

o. Failed to outline how plaintiff did not meet the clear and convincing standard of proof required to be licensed clearly mixing judicial and administrative roles of office.

WHEREFORE, Plaintiff moves this Court for its Order stating that the acts and failures to act of Defendants in establishing Rules and Procedures regarding the Discipline and Reinstatement Processes for Applicants for Attorney Licensure in the State of Missouri violate the procedural and substantive due process rights guaranteed to Plaintiff, entry of an Order declaring that such activities caused Plaintiff significant financial and reputational harm, entry of an order requiring Defendants to compensate Plaintiff in an amount that will make him whole, an entry of punitive damages against Defendants, an order requiring Defendants to reimburse Plaintiffs costs in this action, and for such other relief as is just and proper in these premises.

<u>COUNT II (Negligence)</u>
Negligence under the laws and statutes of the State of Missouri

For Count II of his claim Plaintiff makes the following allegations:

213. The acts of Defendant State of Missouri as outlined in this Complaint constitute negligence and/or gross negligence under the Laws and statutes of the State of Missouri.

214. All defendants, both individually and in their representative capacities as licensing authorities for the state of Missouri, had a duty to ensure that minimum constitutional protections were in place and had a duty to ensure that each of them acted according to the same ethical standards imposed upon plaintiff as attorneys, s each is a licensed attorney.

215. Defendants, and each of them, breached that duty either by failing to impose such standards or neglecting required duties in the licensure process, and/or by intentionally intending to exclude plaintiff from the practice of law.

216. Defendants' breach of the duties owed to plaintiff was the proximate cause of damage to Plaintiff's financial standing and to his reputation.

217. As a result of the above, plaintiff was damaged both financially and to his reputation.

WHEREFORE, Plaintiff moves this Court for its Order stating that the acts and failures to act of Defendants in establishing Rules and Procedures regarding the Discipline and Reinstatement Processes for Applicants for Attorney Licensure in the state of Missouri constitute negligence under the laws of the State of Missouri, entry of an Order declaring that such activities caused Plaintiff significant financial and reputational harm, entry of an order requiring Defendants to compensate Plaintiff in an amount that will make him whole, an entry of punitive damages against Defendants, an order

requiring Defendants to reimburse Plaintiff's costs in this action, and for such other relief as is just and proper in these premises.

<u>COUNT III (Conspiracy)</u>
Negligence under the laws and statutes of the State of Missouri

For Count II of his claim Plaintiff makes the following allegations:

218. The acts of Defendant State of Missouri as outlined in this Complaint constitute conspiracy under the Laws and statutes of the State of Missouri.

219. All defendants, both individually and in their representative capacities as licensing authorities for the state of Missouri, acted together to deny plaintiff licensure.

220. Defendants, and each of them, has a similar goal or object to deny licensure to plaintiff.

221. Defendants engaged in the unlawful acts described above in furtherance of that effort.

222. As a result of the above, plaintiff was damaged financially and suffered significant damage to his personal and professional reputation.

WHEREFORE, Plaintiff moves this Court for its Order stating that the acts and failures to act of Defendants in establishing Rules and Procedures regarding the Discipline and Reinstatement Processes for Applicants for Attorney Licensure in the state of Missouri constitute conspiracy under the laws of the State of Missouri, entry of an Order declaring that such activities caused Plaintiff significant financial harm and damaged his reputation, entry of an order requiring Defendants to compensate Plaintiff in an amount that will make him whole, an entry of punitive damages against Defendants,

an order requiring Defendants to reimburse Plaintiff's costs in this action, and for such

other relief as is just and proper in these premises.

Respectfully submitted,

Samuel Trapp, Pro Se
PO Box 835
Columbia, Missouri 65205
(573) 746-6226
samtrapp1@gmail.com