## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## CENTRAL DIVISION

| | | |
|---|---|---|
| SAMUEL TRAPP, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-04006-MDH |
| | ) | |
| THE STATE OF MISSOURI, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court are Defendants' Motions to Dismiss (Docs. 70, 73, 75) Plaintiff's Fourth Amended Complaint ("Complaint") (Doc. 108), Motion to Dismiss Defendant Wilson (Doc. 111), and Motion to Strike (Doc. 98). The matter has been fully briefed, and it is ripe for judicial review. The Court held a hearing on the instant motions on October 19, 2021. For the reasons set forth herein, all Motions to Dismiss (Docs. 70, 73, 75) are **GRANTED** and the Motion to Dismiss Defendant Wilson (Doc. 111) is **GRANTED**. The Court finds the Motion to Strike (Doc. 98) to be moot. The above-captioned case is dismissed.

## BACKGROUND

Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983 for alleged violations of his civil rights under the 14th Amendment to the United States Constitution. Plaintiff additionally seeks declaratory relief as authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. Plaintiff asserts both federal law and state law claims and asks the Court to exercise concurrent jurisdiction for the state law claims.

Plaintiff's license to practice law in Missouri was suspended for an indefinite period by the Missouri Supreme Court in 2014. Plaintiff does not contend the Missouri Supreme Court erred in

his suspending license. Plaintiff has applied for reinstatement of his law license twice, and the Missouri Supreme Court denied both of Plaintiff's applications for reinstatement. In his Complaint (Doc. 108), Plaintiff requests that the Court declare that the rules and procedures utilized by the Missouri Supreme Court in making its licensing decisions unconstitutional. Plaintiff also seeks damages under § 1983 for alleged constitutional violations by all named Defendants. Plaintiff sues all Defendants in both their individual and official capacities.

Defendant State of Missouri ("the State") is the licensing authority for all professions authorized to conduct business in Missouri, including attorneys. The State, through its Supreme Court, oversees the discipline of any person engaged in the practice of a licensed profession for the violation of professional and/or ethical rules of conduct. Plaintiff also names the current Chief Justice of the Missouri Supreme Court, Paul Wilson, as a Defendant in his individual, representative, and official capacities.

Defendants John Gunn, John Grimm, Lauren McCubbin, Thomas Bender, Mischa Epps, Julia Lasater, Christa Moss, and Jason Paulsmeyer are the current Executive Committee of the Board of Governors of the Missouri Bar ("the Bar"). Defendants John Doe members of the Board of Governors of the Bar are "any other Board of Governor members that reviewed and approved payment of funds to former clients of Plaintiff." (Doc. 108 at 3). Defendant John Doe members of the Missouri Bar Client Security Fund Committee ("CSF") "are appointed by the Missouri Bar Board of Governors to consider claims of former clients and render decision regarding such claims." *Id*. Collectively, these Defendants are referred to as the "Bar Defendants".

Defendant Sam Phillips is an employee of the State of Missouri, employed at the Office of Chief Disciplinary Counsel ("OCDC"). Defendant Phillips has the authority, granted by the State, to investigate attorneys that potentially could be subjected to discipline.

2

For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations in Plaintiff's Complaint as true. Plaintiff applied for and was granted a license to practice law in the State of Missouri in 2001 and practiced law in the state for 14 years. Prior to May 7, 2014, a disciplinary proceeding involving Plaintiff was instituted by the OCDC, alleging numerous violations of the Rules of Professional Conduct. Plaintiff believes he was targeted in the disciplinary process by Defendant Phillips. Plaintiff alleges that, prior to the disciplinary proceedings, Defendant Phillips had provided unsolicited evidence to Plaintiff in a civil case Plaintiff had filed for an Osage Beach, Missouri area client against a local attorney. A conflict allegedly arose between Plaintiff and Defendant Phillips arising out of that matter. Plaintiff generally contends that Defendant Phillips targeted Plaintiff, based on "a particular animus toward Plaintiff," throughout Plaintiff's disciplinary and reinstatement processes. (Doc. 84 at 1).

Defendant Phillips filed a brief with the Supreme Court recommending that the Court not follow the recommendation offered by the OCDC's three-person disciplinary panel when Plaintiff's suspension was under consideration by the Missouri Supreme Court specifically seeking review of a property issue that the panel had decided was an action for which Plaintiff should not be disciplined. On October 14, 2014, Plaintiff's license to practice law in Missouri was suspended by the Missouri Supreme Court. In the order of the Supreme Court, Plaintiff was found to have violated four Supreme Court rules in that (1) he failed to communicate with a client, (2) and (3) he failed to cooperate with the investigators of the Missouri Bar and (4) he had potentially co-mingled his own funds with those in his client trust account. In its Order regarding the suspension of Plaintiff, the Court did not find that Plaintiff violated any Rule regarding the taking of any interest contrary to any client, and no dishonesty, fraud or misappropriation of client funds or property were found to have occurred.

Plaintiff asserts that he is aware of numerous attorneys who have had their licensure as attorneys suspended in the state of Missouri, and such individuals have been swiftly reinstated following periods of suspension upon application for readmission before the Supreme Court. Plaintiff claims he "had every reason to believe that his application for reinstatement would be considered favorably, as his infractions were minor, and he was aware of others who had committed fraud and other felony acts, and even served prison terms, and such applicants have been regularly reinstated." (Doc. 108 at 11).

Plaintiff alleges that after the disciplinary process was completed and Plaintiff's period of suspension had begun, Defendant Phillips began to solicit further complaints against Plaintiff from Plaintiff's former clients, outside of any formal discipline process. These complaints were referred to the CSF, outside of any disciplinary or reinstatement process. The CSF is a committee of the Bar which considers requests for reimbursement from the Bar Fund to clients allegedly impacted by some event arising out of an attorney's conduct. According to Plaintiff, "the Client Security Fund process is really used by Phillips and the Missouri Bar to garner sufficient complaints to attempt to continue to target certain reinstatement applicants, including Plaintiff." (Doc. 108 at 12).

The CSF adopted rules that it uses to resolve complaints against dead, incompetent, disbarred or suspended attorneys. Section 2.2(a) of the CSF Rules states: "A formal claim shall qualify for recognition upon determination by the Committee that … [t]he claimant suffered a loss resulting from a fraudulent or dishonest act which occurred during, or in the context of an attorney-client relationship or a fiduciary relationship between the attorney and the claimant[.]" *Id.* Ex. 1. (Client Security Fund Rules, Sec. 2.2(a)). No other portion of Section 2.2 or any other CSF Rule qualifies this statement.

4

Section 2.6 further provides:

The Committee may recommend payment or denial of a claim based upon the written information submitted to the Committee or it may hold a hearing on a claim…[t]he Committee may engage counsel, who shall not be compensated, who shall have the right to present witnesses and evidence, and to cross-examine witnesses on behalf of the Committee. Claimant may appear in person or by counsel and shall produce the witnesses and evidence at the hearing to sustain the claim.

*Id*.

Section 2.8 states that "[u]pon receipt of the claim, the Committee shall notify the attorney complained of. The Committee shall advise the attorney that the attorney may provide the Committee with information about the circumstances of the claim prior to submission of the Committee's recommendation to the Board of Governors." *Id*.

Furthermore, Section 3.2 provides:

As a condition of payment by the Board on account of any claim, the Board in its sole and absolute discretion may elect to cause The Missouri Bar to be subrogated for the benefit of the Fund, to the rights of the claimant against the attorney or the attorney's estate; or to cause an assignment to be made by the claimant to The Missouri Bar or the Committee's designee of an appropriate interest in any recovery by the claimant against said attorney or the attorney's estate or any other person or entity, or out of any property or liens thereon, arising out of such fraudulent or dishonest act; or to require the claimant to sue or to join in any suit looking to the effectuation of any of the objects herein described; and no such payment shall be made until the claimant shall have executed and delivered to the Committee or its designee such agreements, assignments, receipts or other instruments as the Committee may require in furtherance of the objects hereof.

*Id*.

The CSF process is not part of a Missouri Supreme Court Rule regarding attorney licensure or reinstatement. Neither Rule 5.28 regarding attorney reinstatement, nor any other Supreme Court Rule addresses the CSF process. Plaintiff alleges that when he received notice of the first such complaints and discovered that claimants could only receive payments from the CSF upon a finding of 'dishonest or fraudulent' conduct, he informed the CSF that he believed each of the complaints against him appeared to be in the nature of fee disputes and that he intended to

5

vigorously defend himself against any such claim. Plaintiff also 'insisted' upon hearings on such complaints at that time. (Doc. 108 at 13). Plaintiff allegedly received a reply to that email stating that he was not able to participate in any hearing before the Fund members and that he would be notified if the Board of Governors made 'a determination on payment or denial' of any claim. Plaintiff alleges that he complained about the CSF procedures on numerous occasions, and neither Plaintiff nor his attorney were permitted to participate in the process. The CSF awarded Plaintiff's former clients sums, which were paid by the funds maintained by the Bar to reimburse clients harmed by actions of attorneys.

The six-member CSF Committee operates under rules established by the Board of Governors of the Missouri Bar. The committee may recommend payment of a claim made by a client or former client, in full or in part, or may recommend denial of a claim made to the CSF. All payments recommended by the committee are subject to review by the Board of Governors. The Board retains full discretion regarding payment of any claim.

The Regulations and Rules of Procedure of the CSF are not to be used for fee disputes which instead are mediated under alternative procedures established by the Bar. Plaintiff claims he was not notified when suspended that reimbursement would be a condition of reinstatement.

Plaintiff alleges he is aware that members of the Bar, the Client Security Fund Committee and other attorneys with knowledge of the proceedings before the Fund continue to allege that Plaintiff stole money from his clients and have stated he will never receive his license to practice law in the State of Missouri. Plaintiff claims that "label is the direct result of the Fund paying out money to former clients, given that the Fund may only pay claims to clients that allege that Plaintiff stole money from them. Plaintiff, without defense, has been labeled a thief and a dishonest, fraudulent actor by Sam Phillips (who solicited and encouraged complainants), the Missouri Bar

6

Board of Governors (who made a 'determination' that Plaintiff should be so labeled without contest), and the Missouri Bar Client Security Fund, (who 'recommended' that he be so labeled after having one-sided 'hearings' on claims solicited for that purpose)." (Doc. 108 at 19).

Missouri Supreme Court Rule 5.28 does not specifically require any attorney applying for reinstatement to reimburse any amount paid out to a former client by the CSF. Rule 5.28(i)(9) does, however, provide that restitution is a factor to be considered by the Missouri Supreme Court as part of its reinstatement consideration. "Plaintiff has no idea what any claimant said about him to make their claims successful, nor is he aware of what specific fraudulent or dishonest conduct he allegedly committed with respect to any such claimant, as he was not allowed to participate in the claim process, nor was he permitted to cross-examine any claimant, nor was he allowed to be represented during the process." (Doc. 108 at 20).

Before the CSF proceedings were concluded, Plaintiff applied for the reinstatement of his license before the Missouri Supreme Court. While the case was pending, the Missouri Supreme Court rewrote Rule 5.28 which governs attorney reinstatement. The revised Rule 5.28(i) provides:

(i) The person must establish, by clear and convincing evidence, that the person is of good moral character, is fit to practice law, and the best interest of the public will be served by reinstatement of the person's license to practice law. Factors to consider in determining whether the person has met this burden include the following:
(1) The person's acceptance of responsibility for wrongdoing with sincerity and honesty and a lack of malice toward those who brought evidence against the person;
(2) The extent of the person's rehabilitation, as demonstrated by good current reputation for character and moral standing in the community;
(3) The nature and severity of the misconduct leading to discipline;
(4) The person's conduct since discipline, including strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;
(5) The time elapsed since discipline;
(6) Other instances of dishonesty, criminal behavior, professional discipline, unauthorized practice of law, academic and employment misconduct, financial irresponsibility, or involvement in or neglect of legal and professional matters;
(7) The cumulative effect of all misconduct;
(8) The person's current competency and qualifications to practice law;

7

(9) Restitution;

(10) Candor in the discipline and reinstatement processes; and

(11) Positive social contributions since the misconduct.

This June 27, 2017, version of Rule 5.28 does not include any provision mentioning the CSF, nor did the prior version of the Rule. The current Rule specifically lists factors to be considered to determine whether the applicant "is of good moral character, is fit to practice law, and the best interest of the public will be served by reinstatement of the [applicant's] license to practice law." The prior version provided no such criteria. Plaintiff complains the revision of Rule 5.28 "remov[ed] protections for reinstatement applicants and chang[ed] the standard from satisfactory proof for admission to the standard of clear and convincing evidence, and [does not require] the [OCDC] to refer particular cases to the Board of Legal Examiners for the organization to complete a Character and Fitness Report." (Doc. 66 at 7).

On August 22, 2017, over 18 months after the first application for reinstatement was filed, the Court entered its Order denying Plaintiff's Application for Reinstatement. The Order denying Plaintiffs Application was a one-word decision that recorded that the Plaintiff's application was denied, with no reasoning as to why the Court came to its decision. The Court order identified no additional act of Plaintiff that might have subjected him to further discipline under the prior version of Rule 5.28(j) and provided no guidance as to what Plaintiff should do to be eligible for reinstatement under the new 11-factor version of Rule 5.28.

Plaintiff filed a second petition for reinstatement on September 26, 2017. Plaintiff alleges his petition was fully compliant with Rule 5.28 as it was in effect on September 26, 2017. On October 5, 2017, Defendant Phillips entered his appearance on behalf of the OCDC. More than twenty-one months passed before Phillips filed further pleadings in the case. Defendant Phillips ultimately provided a Report and Recommendation to the Supreme Court, which allegedly "contained no information different than the Report and Recommendation that he filed three years

previously during the proceedings relative to Plaintiff's first request for reinstatement. No mention was made by Phillips of any newly discovered wrong-doing and no mention of defrauded clients was provided." (Doc. 108 at 17). Briefing by Plaintiff noted and discussed the actions of the CSF. Plaintiff raised his concerns regarding the procedures utilized by the CSF in his briefings to the Missouri Supreme Court.

The Missouri Supreme Court denied Plaintiff's second motion for reinstatement. The order stated:

> PETITION FOR REINSTATEMENT AFTER DISCIPLINE DENIED. REINSTATEMENT WILL NOT BE CONSIDERED UNTIL THE MISSOURI BAR CLIENT SECURITY FUND HAS BEEN REIMBURSED. ORDER LETTER ATTACHED TO THIS ENTRY AVAILABLE TO COUNSEL FOR INFORMANT VIA SECURE CASE.NET. ORDER LETTER SENT TO PETITIONER VIA REGULAR MAIL AT TWO ADDRESSES ON THIS DATE.

Plaintiff alleges this is the first time in any Rule or otherwise that the Missouri Supreme Court has conditioned consideration of any future application for reinstatement upon payment of funds to the CSF. Plaintiff asserts that even if he does pay the Fund the amount it wrongfully paid to former clients, the Court would then "come up with other reasons to deny Plaintiff licensure." (Doc. 108 at 21).

Plaintiff pursues five claims in his Complaint. Count I is an action for declaratory relief that Defendants have violated the procedural and substantive due process rights and failed to provide equal protection to Plaintiff and other reinstatement applicants in the license reinstatement process which resulted in the Missouri Supreme Court denying Plaintiff's reinstatement application. Count II is an action for damages against the Defendants for violation of Plaintiff's rights under the United States Constitution pursuant to 42 U.S.C. § 1983.

Count III is a claim for damages against the Defendants (except the State of Missouri) based on defamation (libel and slander) under the laws and statutes of Missouri. Count IV is a

9

Case 2:21-cv-04006-MDH   Document 113   Filed 11/18/21   Page 9 of 20

previously during the proceedings relative to Plaintiff's first request for reinstatement. No mention was made by Phillips of any newly discovered wrong-doing and no mention of defrauded clients was provided." (Doc. 108 at 17). Briefing by Plaintiff noted and discussed the actions of the CSF. Plaintiff raised his concerns regarding the procedures utilized by the CSF in his briefings to the Missouri Supreme Court.

The Missouri Supreme Court denied Plaintiff's second motion for reinstatement. The order stated:

> PETITION FOR REINSTATEMENT AFTER DISCIPLINE DENIED. REINSTATEMENT WILL NOT BE CONSIDERED UNTIL THE MISSOURI BAR CLIENT SECURITY FUND HAS BEEN REIMBURSED. ORDER LETTER ATTACHED TO THIS ENTRY AVAILABLE TO COUNSEL FOR INFORMANT VIA SECURE CASE.NET. ORDER LETTER SENT TO PETITIONER VIA REGULAR MAIL AT TWO ADDRESSES ON THIS DATE.

Plaintiff alleges this is the first time in any Rule or otherwise that the Missouri Supreme Court has conditioned consideration of any future application for reinstatement upon payment of funds to the CSF. Plaintiff asserts that even if he does pay the Fund the amount it wrongfully paid to former clients, the Court would then "come up with other reasons to deny Plaintiff licensure." (Doc. 108 at 21).

Plaintiff pursues five claims in his Complaint. Count I is an action for declaratory relief that Defendants have violated the procedural and substantive due process rights and failed to provide equal protection to Plaintiff and other reinstatement applicants in the license reinstatement process which resulted in the Missouri Supreme Court denying Plaintiff's reinstatement application. Count II is an action for damages against the Defendants for violation of Plaintiff's rights under the United States Constitution pursuant to 42 U.S.C. § 1983.

Count III is a claim for damages against the Defendants (except the State of Missouri) based on defamation (libel and slander) under the laws and statutes of Missouri. Count IV is a

9

claim for damages based on the negligence of Defendants (except the State of Missouri) under Missouri law. Count V is a claim for damages against all of the Defendants (except the State of Missouri) based on a civil conspiracy theory.

## STANDARD

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(1) is a challenge to the court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). The party attempting to invoke the federal court's limited jurisdiction has the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.*

## DISCUSSION

### A. Plaintiff's action is barred by the *Rooker-Feldman* doctrine

"The *Rooker-Feldman* doctrine provides that, 'with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments.'" *Mosby v. Ligon*, 418 F.3d 927, 931 (8th Cir. 2005) (quoting *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003)). "The [*Rooker-Feldman*] doctrine bars federal courts from hearing cases brought by the losing parties in state court proceedings alleging 'injury caused by the state-court judgment and seeking review and rejection of that judgment.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)).

The Court in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), held that state court decisions concerning attorney licensing requirements are "a judicial inquiry in which the court was called upon to investigate, declare, and enforce liabilities as they stood on present or past facts and under laws supposed already to exist." *Id*. at 479 (internal quotations and

brackets omitted). As such, while further review can be sought by applying to the United States Supreme Court for a writ of certiorari; it cannot be had by filing a new suit in a lower federal court.

For a plaintiff's claims to overcome *Rooker-Feldman*, the claim must be "prospective and directed toward the rules and procedures for considering future petitions for reinstatement, rather than toward the decision of the state supreme court[.]" *Centifanti v. Nix*, 865 F.2d 1422, 1429 (3d Cir. 1989) (internal quotations omitted) (holding that plaintiff's petition overcame *Rooker-Feldman* because it "challenge[d] the constitutionality of the Pennsylvania rules as they exist, rather than the state court's application of them to deny his petition").

The *Rooker-Feldman* doctrine applies even if a plaintiff attempts to frame the federal challenge broadly, so long as the challenge is essentially directed at a specific licensing decision. *See, e.g., McKenna v. Curtin*, 869 F.3d 44, 48 (1st Cir. 2017) (§1983 claims challenging state system for attorney discipline were barred because they "concern the constitutionality of the rules as applied to [plaintiff]"); *Stern v. Nix*, 840 F.2d 208, 212-13 (3rd Cir. 1988) (challenge to rule allowing court to disregard recommendations of hearing panel barred as an attempt to reverse plaintiff's disciplinary decision); *Engel v. Client Security Fund Commission of the California State Bar*, No. 2:21-CV-0624 DB PS, 2021 WL 4751275, at *1 (E.D. Cal. Oct. 12, 2021) (holding *Rooker-Feldman* barred plaintiff's challenge of the constitutionality of the actions of the state bar in relation to attorney licensing).

Furthermore, if constitutional claims presented to a federal district court are "inextricably intertwined" with the state court's denial in the judicial proceeding of a particular plaintiff's application for admission to the state bar, the district court is in essence being called upon the review the state court decision; this is barred by *Rooker-Feldman*. *Feldman*, 460 U.S. at 486–87. *See also, Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) ("[C]onsidering whether a claim

11

is 'inextricably intertwined' with a state court judgment…[is] merely a way of ensuring that courts do not exercise jurisdiction over the appeal of a state court judgment simply because the claimant does not call it an appeal of a state court judgment.").

Plaintiff relies heavily on *Behr*, a case involving the rights of parents in child custody cases, to suggest that his claims fall outside of the *Rooker-Feldman* doctrine. Specifically, Plaintiff emphasizes that the 11th Circuit described *Rooker-Feldman* as "narrow" and that it "does not block claims that 'require some reconsideration of a decision of a state court[.]'" *Behr*, 8 F.4th at 1212 (quoting *Exxon Mobil*, 544 U.S. at 293, 125 S.Ct. 1517). However, *Behr* is neither controlling nor particularly persuasive in this case. Nothing in *Behr* alters the principles of the *Rooker-Feldman* doctrine, and the 11th Circuit's discussion as to how broad it interprets that doctrine to be does not change its applicability to Plaintiff's action. Plaintiff further argues that the "Eighth Circuit follows this narrow interpretation of *Rooker-Feldman*." (Doc. 91 at 8) (citing *Carter v. Ludwick*, Case No. 20-3042 (8th Cir. July 21, 2021)). However, *Carter* does not support Plaintiff's assertion. It involved allegedly unconstitutional procedures of the discovery process in a civil action, and there is little to no reasoning in the opinion as to how the 8th Circuit concluded that *Rooker-Feldman* did not apply in that case.

Here, Plaintiff brought nearly identical arguments to those at issue in the instant case before the Missouri Supreme Court during both reinstatement proceedings. (*See* Docs. 50-3, 50-4). For example, in his briefing before the Supreme Court as part of the court's consideration of his first reinstatement application, Plaintiff argued:

> [The CSF's procedures are] inherently unfair, particularly if used as a method to prevent former attorney from being reinstated, or forcing him to reimburse funds expended to third parties in this process that for all intents and purposes adjudges the ex-attorney as fraudulent or dishonest, with no right to defend himself during such adjudication. As correctly noted by the [OCDC], Applicant has railed against this procedure from the very first indication that it was to be used to grant 'refunds'

to clients, former clients and even third party non-clients; refunds that Applicant might eventually be forced to repay to the third-party organization 'determining' that he was dishonest or acted in a fraudulent manner.

(Doc. 50-3 at 13-14). In his response to the OCDC's Report and Recommendation to the Supreme Court as part of the court's consideration of Plaintiff's second application for reinstatement, Plaintiff wrote, for example:

> The [OCDC] continues to poke fun at the Applicant for holding the belief that the Fund process is constitutionally flawed if an Application for Reinstatement is predicated upon an Applicant covering such awards. But Applicant's argument that his interests were not protected during the [CSF] proceedings against him does have merit. Rule 5.28 does not require an applicant for reinstatement to reimburse the [CSF]…

(Doc. 50-4 at 3).

It is also clear from Plaintiff's arguments, both in the current matter and his previous arguments before the Missouri Supreme Court, that despite the fact Plaintiff uses blanket language that the rules and procedures used by the CSF and the Missouri Supreme Court are unconstitutional, he alleges that those rules and procedures are unconstitutional as applied to Plaintiff himself. Plaintiff's arguments in this case center around the application of the allegedly unconstitutional procedures to his own reinstatement application. As such, there is no doubt that Plaintiff's arguments in the current matter are inextricably intertwined with the Missouri Supreme Court's decisions to deny his reinstatement. Accordingly, Plaintiff's action is barred by the *Rooker-Feldman* doctrine.

1. *Defendants State of Missouri and Chief Justice Paul Wilson*

Plaintiff first argues that the fact that the attorney profession is the only Missouri profession requiring licensure that is not subject to the provisions of the Division of Professional Registration

13

violates constitutional rights due process[1] and equal protection. (Doc. 108). "The Missouri Supreme Court sets the rules for licensure of attorneys, absent regulations established by the legislative branch of government and absent executive branch authority of any kind." *Id*. The Missouri Constitution vests within the Missouri Supreme Court the authority and power to admit, discipline, disbar, and readmit members of the legal profession authorized to practice before Missouri Courts. The people of Missouri are well within their rights to constitutionally empower their Supreme Court to regulate the practice of law and empower the judicial branch of the Missouri state government alone to regulate the attorney profession. MO. CONST. ART. 5, § 5. The fact that other professions are regulated by the executive branch of the Missouri state government is of no constitutional concern.

Plaintiff generally argues that his action is not barred by the *Rooker-Feldman* doctrine because he is not requesting that this Court grant his reinstatement or directly overturn the Missouri Supreme Court's decisions to deny his reinstatement. Rather, Plaintiff suggests that he seeks an order from this Court declaring the procedures set forth in the rules adopted by the Supreme Court pertaining to the readmission process after attorney license suspension to be in violation of his Constitutional rights. In addition to his concerns regarding the CSF process, Plaintiff complains about the absence of time limits relating to the amount of time the Missouri Supreme Court takes to rule on an application for readmission; he complains that the ruling on the application requires no, and provided him with no, reason or explanation for denial; and he complains the procedures

---

[1] The law is clear that there is no protectable property interest in a law license or the right to practice law. *In re Downs*, 363 S.W.2d 679, 691 (Mo. 1963) (en banc); *see also In re Wilson*, 391 S.W.2d 914, 919 (Mo. 1965) (en banc) (no right to "continuance in the practice of law"); *State ex rel. McKittrick v. C. S. Dudley & Co.*, 102 S.W.2d 895, 902 (Mo. 1937) ("[t]he right to practice law is a privilege or franchise not open to every person, but only to those who are qualified and licensed by this court"). The Court is not aware of any case law that would suggest that there is any protectable property interest in the reinstatement of a suspended law license.

provide inadequate due process by not allowing him to contest issues surrounding repayment of sums paid out by the CSF.

The Court understands Plaintiff's frustrations. However, the Court finds that the process used by the Missouri Supreme Court is "inextricably intertwined" with the merits of its decisions concerning who should or should not be permitted to practice law in the State of Missouri. *See, Feldman*, 460 U.S. at 486–87. *Rooker-Feldman* provides that this Court may not instruct the Missouri Supreme Court how to exercise its constitutional responsibilities in regulating the Bar or attorney licensing in any particular matter. As to Plaintiff's concerns noted above, the length of time it to consider a readmission application is intertwined with the ultimate actions of the Supreme Court, including the time needed for investigation and resolution of issues deemed relevant to the ultimate decision on any particular reinstatement application. It would be inappropriate for this Court to impose any time limit on the Missouri Supreme Court's decision-making process. The decision of the Supreme Court to order denials without a detailed explanation of its reasoning is a decision of that court intertwined with its ultimate order and authority to issue such order. There is no constitutional right to an explanation.

Issues concerning the reimbursement of the CSF were briefed by Plaintiff while his readmission was under consideration by the Missouri Supreme Court. A ruling by this Court that Plaintiff should have been able to further advance his position on the issue or be granted a further right to be heard would be the equivalent of ruling the court did not fairly consider his briefing on the issue. The members of the Missouri Supreme Court clearly had notice of Plaintiff's position regarding CSF practices and procedres when it denied his application for reinstatement. This Court cannot second guess the Missouri Supreme Court and order it to rule for Plaintiff on the issue. The Court has no basis to require the Missouri Supreme Court to give further consideration to

Plaintiff's position. To do so would impermissibly interject this Court into the Supreme Court's legitimate constitutionally authorized power.

Plaintiff emphasizes that the CSF should not have paid out funds under its own rules absent fraud and dishonesty, which he denies. However, Missouri Supreme Court Rule 5.28(9) specifically allows the Supreme Court to consider whether restitution has been paid. It is not, by its own terms, limited to requiring restitution in instances of fraud and dishonesty only. The Supreme Court could legally find and reasonably conclude restitution appropriate absent fraud or dishonesty.

2. *Missouri Bar Defendants*

Plaintiff's actions against the Bar arise from the actions of the CSF, which presumably resulted in the Missouri Supreme Court's note in its most recent order that it would not reconsider a future application for readmission by Plaintiff unless Plaintiff reimburses the CSF for funds it paid to Plaintiff's former clients. Plaintiff, as noted, maintains that none of these clients should have been entitled to payment under the CSF's own rules and that the actions of the CSF occurred outside of any constitutionally permissible procedures. It is not entirely clear the extent to which Plaintiff had input or opportunity to be involved in the proceedings of the CSF. He claims he submitted some written opposition to at least some client reimbursement requests but was not alerted to other cases before the payments were made. Plaintiff furthermore complains that he was not allowed a hearing in front of the CSF on any of the claims.

However, the funds paid by the CSF to Plaintiff's former clients *were not* Plaintiff's funds, but rather funds of the Bar reserved for the very purpose of reimbursing clients it determines suffered financial consequence due to the wrongful acts of attorneys that represented them. While the Bar may have requested that the Missouri Supreme Court require reimbursement as a condition

16

of Plaintiff's reinstatement, the Missouri Supreme Court ultimately makes that determination. Any damage to Plaintiff's effort for readmission arises as a result of the decision of the Missouri Supreme Court to require restitution not from the decision of the CSF or Bar. The Supreme Court alone makes the ultimate determination as to whether any reimbursements are required in order for the court to reconsider reinstatement. Mo. Supreme Court Rule 5.28(9). The court was not required to accede to the request for reimbursement—the Missouri Supreme Court chose to request restitution as a prerequisite for reinstatement. There is no reason to believe that the Supreme Court blindly accepted the CSF's request. Plaintiff's concerns were briefed to the court, and there is no reason to believe they were not considered.

   3. *Defendant Sam Phillips*

Plaintiff also brings actions against Sam Phillips of the OCDC, arguing that Defendant Phillips violated Plaintiff's constitutional rights by soliciting Plaintiff's former clients to make claims to the CSF and causing delays in in the processing of Plaintiff's reinstatement application. Plaintiff alleges that Defendant Phillips has a personal vendetta against Plaintiff arising out of some past encounter and that as a result, the OCDC recommendations to the Supreme Court were purposefully delayed and otherwise unfair to Plaintiff. Plaintiff claims Phillips solicited new complaints against him and referred former clients to the CSF. The Court cannot say that Defendant Phillips' actions in any of the reports were outside the ordinary scope of the duties of the OCDC. This Court concludes that Plaintiff's federal claims against Defendant Phillips are inextricably intertwined with the Missouri Supreme Court's denial of Plaintiff's application for reinstatement and thus the Court does not have subject matter jurisdiction over these claims under *Rooker-Feldman*. It is for the Missouri Supreme Court to identify, address, and remedy any alleged abuse of power or process it may identity in the actions of Defendant Phillips or the OCDC.

In any event, this Court finds that Defendant Phillips would be entitled to immunity in his role at the OCDC. Missouri Supreme Court Rule 5.315(c) states that the "advisory committee, *chief disciplinary counsel*, regional disciplinary committees, disciplinary hearing panels, trustees appointed pursuant to Rule 5.26, their staffs and representatives *are immune from suit for any conduct in the course of their official duties*." (emphasis added).

Defendant Philips is also entitled to absolute prosecutorial immunity. When government officials "functionally serve in capacities comparable to judges, prosecutors and jurors" they are entitled to absolute immunity. *Buser v. Raymond*, 476 F.3d 565, 568 (8th Cir. 2007). "In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity" the United States Supreme Court has established a "functional approach," which examines "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

Absolute immunity has been afforded to government attorneys who exercise prosecutorial functions. *See Butz v. Economou*, 438 U.S. 478, 516-17 (11088); *Dunham v. Wadley*, 195 F.3d 1007, 1011 (8th Cir. 1999) ("While some of the [Arkansas Veterinary Medical Examining Board's] functions, such as bringing an enforcement proceeding in Arkansas state court, might have been prosecutorial in nature, we note that courts have also granted absolute immunity to actors who perform such prosecutorial functions.").

Defendant Phillips, as an Assistant to the Chief Disciplinary Counsel, is governed by Missouri Supreme Court Rule 5 and acts in the same capacity as a prosecutor in attorney discipline proceedings. Defendant Phillips serves "as counsel for the bar in all disciplinary proceedings" and conducts investigations as required by Missouri Supreme Court Rule 5. Mo. Sup. Ct. R. 5.06; Mo.

18

Sup. Ct. R. 5.08(a). Assistants to the Chief Disciplinary Counsel like Defendant Phillips may conduct investigations to enforce Missouri Supreme Court Rules 4, 5, and 6. Mo. Sup. Ct. R. 5.07(a). Defendant Phillips also has the authority to "prosecute any information, complaint or proceeding instituted or pending before any committee or court." Mo. Sup. Ct. R. 5.07(a). Included in Defendant Phillips's authority is the power to issue subpoenas and to prepare information upon finding probable cause to believe an attorney violated Missouri's ethics rules. Mo. Sup. Ct. R. 5.09; Mo. Sup. Ct. R. 5.11.

## B. State law claims

Plaintiff's remaining claims arise under Missouri state law. As such, these claims do not satisfy 28 U.S.C. § 1331, which provides this Court with jurisdiction to hear actions "arising under the Constitution, laws, or treaties of the United States." Although diversity jurisdiction, found in 28 U.S.C. § 1332, provides another potential source of jurisdiction, the complete diversity of citizenship required is not present here because Plaintiff is a citizen of Missouri, as are most of the defendants. Therefore, Plaintiff's state law claims are dismissed without prejudice for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and 12(h)(3).

## CONCLUSION

In sum, this Court lacks subject matter jurisdiction over Plaintiff's federal claims under the *Rooker-Feldman* doctrine pursuant to Fed. R. Civ. P. 12(b)(1). Some of his other claims are barred by prosecutorial immunity and other immunities. If the Missouri Supreme Court again denies Plaintiff's application for reinstatement or declines to consider such an application—and Plaintiff believes such action violates his constitutional rights—Plaintiff may then seek further review of Constitutional issue by applying to the United States Supreme Court for a writ of certiorari. *See Feldman*, 460 U.S. at 475; *Charchenko v. City of Stillwater*, 47 F.3d 981, 984 (8th Cir. 1995).

Defendants' Motions to Dismiss (Docs. 70, 73, and 75) are **GRANTED**. The Motion to Dismiss Defendant Wilson (Doc. 111) is **GRANTED**. Counts I and II, which seek declaratory relief and damages under 42 U.S.C. § 1983, are dismissed with prejudice as to all Defendants for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine. The claims for defamation, negligence, and civil conspiracy under the laws and statutes of the State of Missouri contained in Counts III, IV, and V are dismissed without prejudice as to Defendants the Missouri Bar, John Gunn, John Grimm, Lauren McCubbin, Thomas Bender, Mischa Epps, Julia Lasater, Christa Moss, Jason Paulsmeyer, the Missouri Bar Client Security Fund, and all "John Does"[2] for lack of subject matter jurisdiction under 28 U.S.C. § 1331. The state law claims in Counts III, IV, and V are dismissed with prejudice as to Defendant Sam Phillips in both his official and individual capacity based on Defendant Phillips' absolute prosecutorial immunity and immunity under Missouri Supreme Court Rule 5.315(c). The Court finds the Motion to Strike (Doc. 98) to be moot. Each party shall be responsible for their own costs and attorney fees.

**IT IS SO ORDERED.**

Dated: November 18, 2021                                     /s/ Douglas Harpool
                                                            **DOUGLAS HARPOOL**
                                                            **United States District Judge**

---

[2] Plaintiff's Complaint asserts claims against "John Doe Members of the Missouri Bar Client Security Fund Committee" and "John Doe Members of the Board of Governors of the Missouri Bar."